Kohl, Appellant, *v.* Lentz.

Argued January 9, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused November 27, 1973.

*Thomas J. Calnan, Jr.,* with him *Stamberg, Caplan, Calnan & Behrle,* for appellant.

*Herbert Fishbone,* with him *Fishbone and Refowich,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, October 3, 1973:

Charles F. Kohl [Kohl] was employed by the Allentown News Agency, Inc. [News Agency] until June 22, 1972, and owned four shares of stock in said corporation.

Prior to February 28, 1969, Kohl had been the owner and sole stockholder of Hamilton News Agency, Inc., engaged in the distribution of magazines, newspapers and periodicals in Allentown and surrounding areas, which company was a direct competitor of News Agency. The sole stockholder of News Agency was William P. Lentz.

Kohl and Lentz entered into an agreement whereby Hamilton News Agency, Inc., was dissolved and Kohl became an employee of News Agency and was given four shares of stock in News Agency in consideration of the agreement. Kohl, on February 28, 1969, was granted a stock purchase agreement, to which agreement Lentz and News Agency were parties. Under the agreement Kohl was given the right to purchase at "book value" Lentz's stock, both during Lentz's lifetime as well as after his death, and a formula was set up in the agreement to determine the purchase price, *i.e.,* the "book value" of News Agency's stock.

Lentz died on June 27, 1971, and thereafter Pearl Lentz, Lentz's widow, became President of News Agency and its chief executive officer. Little more than a month after Lentz's death the corporation's accountant forwarded to Kohl an alleged valuation of News Agency's corporate stock with an "adjusted book value" of the stock at $338,425.99. Kohl claims that the valuation was inflated as the result of a conspiracy between News Agency's accountant and Mrs. Lentz and that, as a result of the conspiracy, the value of the corporate stock was placed at a point where it was no longer possible for Kohl to buy and exercise his right to purchase under the agreement.

Kohl instituted an action in equity against Pearl M. Lentz as an individual, although she is described in the complaint as an individual and executrix under Lentz's Last Will, and News Agency. In this equity action, Kohl alleges that which "appears to centralize on the ownership of the shares of stock and the rights, duties and obligations that flow therefrom by reason of the Stock Purchase Agreement as a consequence of" Lentz's death. Mrs. Lentz and News Agency filed preliminary objections raising the question of whether jurisdiction in the subject matter of the action is exclusively vested in the Orphans' Court Division.

The Common Pleas Court of Lehigh County upheld the preliminary objections and dismissed the action for lack of jurisdiction. From that decree this appeal followed.

We believe that the court below acted properly in the circumstances. The Orphans' Court Act of 1951, 20 P.S. §2080.301, places exclusive jurisdiction in the Orphans' Court Division of "Specific Performance of Contracts. To enforce specifically the performance by either party of any agreement made by a decedent to purchase or sell real or personal property. . . . Title to

Personal Property. The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death."

The shares of stock in News Agency were in the name of the decedent at the time of his death and the ownership of such stock was exclusively a matter to be determined in the Orphans' Court Division. *See Eberhardt v. Ovens*, 436 Pa. 320, 259 A. 2d 683 (1969) ; *Perri v. Chiavaroli*, 370 Pa. 495, 88 A. 2d 798 (1952).

It is the contention of the appellant Kohl that *Ellis v. Ellis*, 415 Pa. 412, 203 A. 2d 547 (1964), rather than *Eberhardt v. Ovens* controlled. *Ellis v. Ellis* is completely inapposite: immediately upon Ellis' death, the partnership was dissolved and the question at issue was the valuation and distribution of the partnership interest. There was no question as to whether the estate was entitled to the partnership interest but the valuation and extent of such interest was clearly a matter for the Court of Common Pleas in Equity. On the other hand, in the case at bar the stock sought to be purchased was owned and held in the name of Lentz at the time of his death.

Kohl has a full and complete remedy in the Orphans' Court Division wherein he could seek specific performance of the agreement between Lentz, the News Agency and himself and the question of valuation of the stock owned by the estate can be determined in that division. Both under the statute and the case law exclusive jurisdiction of this controversy is vested in the Orphans' Court Division.

Decree affirmed. Costs on appellant.

Mr. Justice ROBERTS concurs in the result.

110

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I respectfully dissent. The Court, in my judgment, makes two errors. The first is in its analysis of the nature of this action, leading it to the faulty conclusion that it is a matter covered by the Orphans' Court Act of 1951[1] and hence now cognizable by the Orphans' Court Division of the Court of Common Pleas of Lehigh County. The second, and in my view the more serious mistake, is the disposition here made of the case, assuming it should have been brought in the Orphans' Court division instead of in equity, namely, an outright dismissal. The proper remedy, if filing was made in the wrong division, was not to dismiss, but to transfer the case to the proper division; there is no justification whatever for putting the plaintiff out of court.

1. The Court construes the complaint as seeking specific performance of an agreement by a decedent to sell personal property, and as such covered by §301(9) of the Orphans' Court Act, or as seeking to have adjudicated title to personal property (shares of stock of the decedent) registered in decedent's name and in the possession of his personal representative, and as such covered by §301(13) of the Orphans' Court Act. In either situation, admittedly, subject-matter jurisdiction would have been in the Orphans' Court prior to the adoption in 1968 of the new Article V of the Pennsylvania Constitution. Since the effective date of that article, the jurisdiction is in the Court of Common Pleas, but to be exercised through its Orphans' Court division.

The cause of action asserted by the complaint, however, does not clearly fit either category relied upon by the majority. The suit is not against a decedent or his personal representative, but against the corporation of

---

[1] Act of August 10, 1951, P. L. 1163, Art. III, §301, 20 P.S. §2080.301.

which decedent was an officer and shareholder, and decedent's widow, who allegedly succeeded to his stock interest. It is based on a stock purchase agreement entered into by appellant with the appellee corporation and the decedent, but it does not seek specific performance, and there is no dispute as to title to the stock. The complaint rather states a classic type of equitable action, alleging mishandling of corporate affairs by the decedent's widow, refusal to allow plaintiff, a shareholder, access to examine the corporate books, fraudulent preparation of a corporate financial statement so as to inflate book value and thereby prevent appellant from exercising his stock option, etc. The relief prayed for is access to the corporate records, cessation of payments by the corporation to the widow, ascertainment of the fair book value of the corporation, and allowance of a reasonable time to plaintiff to make settlement for the shares which he is entitled to purchase. No wrongdoing or breach of contract by the decedent is alleged, nor by the widow in the capacity of executrix. While ultimately specific performance may be involved, that time has not yet arrived. In my judgment, the case was properly brought in equity.

2. Even if it be assumed, however, that the Orphans' Court division is the proper forum, dismissal of the complaint is surely not the proper remedy. Such an ouster harks back to the days when there were separate Orphans' Courts, and ignores completely their abolition in 1968 by the new Judiciary Article, and the establishment of a "unified judicial system" in Pennsylvania.

There is now in Pennsylvania but one court of "unlimited original jurisdiction in all cases," the reconstituted courts of common pleas, one in each judicial district. Pennsylvania Constitution, Art. V, Sec. 5(b). Section 4 of the Schedule to the Judiciary Article provides that in judicial districts such as the

112

31st district (Lehigh County) which have separate orphans' courts, such courts become "orphans' court divisions" of the courts of common pleas, and that the courts of common pleas "shall exercise the jurisdiction presently exercised by the separate orphans' courts through their respective orphans' court division." There has been no legislation since the adoption of the new Judiciary Article in 1968 which has altered the allocation of subject-matter jurisdiction as between divisions established by Section 17 of the Schedule. If these changes in court structure brought about in 1968 mean anything, it is that what once were challenges to the very competence of a court to hear a lawsuit now are simply questions of internal court administration. This is not to say that we should sanction a cavalier disregard of purposely drawn distinctions among the several divisions, intended to recognize the expertise of the judges who staff them. It does mean, however, that the consequence for procedural errors of the sort here involved should not be total expulsion from the judicial system, but rather adjustment within.

Thus there can be no question that the lower court had jurisdiction of the instant suit; the only question is through what division of the court the jurisdiction should be exercised. If indeed the plaintiff chose the wrong division, the proper course is for the lower court to transfer the case to the correct division, not to dismiss the action, as was done here. Cf. *Posner v. Sheridan*, 451 Pa. 51, 299 A. 2d 309 (1973) ; *Shaffer v. Dooley*, 452 Pa. 414, 308 A. 2d 597 (1973).

———

DISSENTING OPINION BY MR. JUSTICE NIX:
I dissent.

The result reached by the Court today represents yet another determined effort to ignore the clear mandate of Art. V, Sec. V of the Pennsylvania Constitu-

tion[1] and to frustrate the policy the framers of that Article sought to accomplish. *See also, Posner v. Sheridan,* 451 Pa. 51, 299 A. 2d 309 (1973); *Eberhardt v. Ovens,* 436 Pa. 320, 259 A. 2d 683 (1969). As I noted in my dissent in *Posner v. Sheridan, supra,* at 64 (joined by ROBERTS and MANDERINO, JJ.), the unification of the courts of common pleas was designed to eliminate the procedural pitfalls posed by the overlapping and sometimes hazy boundaries of the jurisdictions of the former courts. 451 Pa. at 65. The instant case arguably could have been an appropriate subject for a Court of Equity, as suggested by my brother, Mr. Justice POMEROY, in his dissenting opinion in this case. Assuming, however, that the Chancellor was correct in his judgment that the Orphans' Court Division would be a more appropriate form for this action, there is absolutely no basis for his Decree dismissing the complaint and placing the plaintiff in the position of perhaps having his action forever barred by a statute of limitations.[2]

We are of the opinion that at best this may have been an inappropriate exercise of jurisdiction. We note that even if the majority was correct in its determination that there was no jurisdiction in the court below, the result reached could have been avoided under Pa. R.C.P. 213(f).[3]

---

[1] "There shall be one court of common pleas for each judicial district . . . having unlimited original jurisdiction in all cases except as may otherwise be provided by law."

[2] The record does not show whether distribution of the decedent's estate has occurred. Our decision today may have resulted in precluding relief to this litigant. *See,* Probate, Estates and Fiduciaries Code, Act of June 30, 1972, P. L. 508, No. 164, 20 P.S. §3533.

[3] "When an action is commenced in a court which has no jurisdiction over the subject matter of the action it shall not be dismissed if there is another court of appropriate jurisdiction within the Commonwealth in which the action could originally have been brought but the court shall transfer the action at the cost of the plaintiff to the court of appropriate jurisdiction."

I must dissent from the Court's affirmance of the Decree dismissing this complaint.

Mr. Justice MANDERINO joins in this dissenting opinion.